We'll move to the fifth case of the day, United States v. Street. Good morning. May it please the Court. I'm Chris Donovan. I represent Mr. Street on this appeal. The Constitution prohibits selective enforcement of the law based on considerations such as race. The United States Supreme Court made that clear in Wren in 1996. And that's precisely what happened in this case when the district court found, and I think the record clearly supports, that Mr. Street was illegally stopped by police solely because he was black. Counsel, let me ask you a question. So when the officers arrived at the Walmart parking lot, one of them saw three African-American men standing next to the SUV that had been tracked. Would there have been reasonable suspicion to stop Mr. Street at that point? Well, first off, I don't think that they did see him near the SUV. I think the testimony was clear it was around the corner from the SUV. The SUV was kind of back further behind the Walmart, and then by the time Officer Wicklack and Steffens approach, the three black males are away from the SUV, kind of in front of the store. One turns out to be an employee, and that's in the record, by the way. I can give you the citation if you want it. One immediately flees at the sight of police. Wicklack and Steffens then pursue that one, and then they just say on the radio, we think maybe one went into the Walmart. They don't even, I went back and kind of double-checked the record, I don't think there's ever a mention of three. He just says one may have gone in. So they get the one who fled. The second suspect was eventually apprehended outside the Walgreens, across the street or kitty corner. And by that point, there's two people in custody, and they've only had information that there's two suspects. There was never information given to any officer that there was three. Do you think the police were required to assume they had the right people in those first two? I think when the two flee, yeah. I mean, one takes off on foot, they get him within two minutes. The other one's going through a marsh across the street by Walgreens, and is in the process of fleeing. But I'm confused, because I thought there was testimony that one of the officers saw three, and then I thought that the surveillance video from the parking lot confirmed that. There was testimony that he saw three black males. Two are apprehended before they stop Mr. Street. The third one turns out to be an employee. Well, they all disperse, right? No, two disperse. The employee doesn't disperse. He's an employee putting, I think, carts away, if you look at the video. He's in like a red rain slicker. So by the time Mr. Street is stopped, they have two suspects in custody accounted for. Two is the only information they ever had about participating in this crime. The employee is an employee, and didn't flee. And as far as the video, that's not seen until after Mr. Street has stopped and let go. So the confirmation that three black males came out of the vehicle didn't occur until well after the stop. So the officer who stopped Mr. Street could not have known that, and did not know that. Mr. Donovan, how many African American males did the police encounter at the Walmart over the whole episode? Well, I mean, one in the crowd coming out of the Walmart, which is Mr. Street. I'm not sure if the police encountered the black male employee. But again, that was clear on the video, and it makes it into the record. I can give you the record citation for that. I think it's in your brief. Yeah. Court record 149 at page 41. This is the transcript of the hearing we had in May of 2017. So I don't know if the police encountered that employee, or interviewed him, or not. But it would be three or four? It would be four if the employee was counted, correct. Okay. Total? Total. Okay. Let me explain what troubles me here. You've emphasized race and gender, which obviously can be pretty important parts of identification. But we've also got time and place here, with this extraordinary move of stealing a tracking device. So the police are on the SUV immediately. And so there are three or four people, if I understand what the record shows here, three or four people here, who fit that very general description, black males. And I think I understand your argument, but let me ask, suppose a robbery is reported in an overwhelmingly African American part of a city. The report is it's white males who conducted the robbery. We get, they're tracked quickly to a location where there are only three or four white males. Would it be racist and unconstitutional to stop those three or four white males for purposes of identification and identification? I would say yes, it would be, because this is the hunch part. The hunch is two black males committed the robbery. We have a hunch maybe a third was involved, although we have no information that a third was involved. We have no description that a third was involved at that time. And so therefore, we can stop all black males. That's the two hunches. Not all, three or four. Well, I guess I would assert if there was, let's say there was 20 black males outside the Walmart. I don't think that changes the analysis. In fact, that would just illustrate even more why that would be an illegal dragnet type action for stopping people based only on a race and sex characteristic. So to answer your hypothetical, I would say yes, that would be illegal if the situation was reversed and it was four white people in a black neighborhood. Same analysis. Both the magistrate judge and the district court concluded there was a second rationale for admitting the evidence, and that is inevitable discovery. I did not see any challenge to that alternate rationale for admitting the evidence in the brief. Why is that not fatal to streets' appeal? In other words, even if we agreed with you, even if, that the stop was unlawful and the attenuation was insufficient, this evidence would have come in any way under the inevitable discovery doctrine. No? I don't see how it could have. I don't know. Because the two co-defendants that eventually identify Mr. Street from the pictures that stop, which is his name, date of birth, other personal identifying information, they can't provide that. The only person and the only source that provided that in this case was Mr. Street himself during the illegal stop. The co-defendants, the two people who were arrested fleeing from the scene, can only give vague nicknames and a description. They can't give a name, they can't give any address, identification information, nothing. And so I don't see how inevitable discovery could apply here. I think it was brought up briefly before the magistrate. I know Judge Pepper, I believe I'll have to double check, did not rely on that whatsoever in her analysis. And so I don't think that this is before the court. Her analysis focused exclusively on attenuation, and as we pointed out in our reply brief, she even declined to rehear the basis for the stop itself. So I believe by this point where we are now on appeal, it's just the attenuation factors before this court. Counsel, I'm sorry to go. I just want to be sure that I have this right. The district court in its order adopting the magistrate's order said one officer believed he originally saw three individuals get out of the white SUV. The officer apprehended one as he fled on foot, and then the perimeter goes on. But you said something different today. You said that they didn't see the individuals by the SUV and that they never saw three individuals getting out of the SUV. They didn't ask. The testimony is clear. So this is incorrect. That would be incorrect. And that was the order adopting before the motion to reconsider. That was before the May 17th evidentiary hearing. If you go, if you look at, and I can again provide pinpoint sites if I would have more time. Officers Wicklack and Stevens, who are the two that first appear on scene that see the one flee towards the cemetery, are very clear on their testimony that they do not see three males get out of the SUV. They see three males in between the SUV and the entrance to the Walmart, which is several hundred feet away. One turns out to be an employee in a red rain slicker. One takes off towards the cemetery, and one eventually is apprehended by the Walgreens fleeing through a marsh. Okay. Thank you. So I want to briefly go through the attenuation factors. I know I'm getting close to my time here, and why I think that they do favor us and why the district court was incorrect about that. And I'm going to start with what this court has said is the most serious or most important one, which is flagrancy of the police misconduct. There's two prongs within that factor. The first one is, what was the purpose of the stop, or the purpose of the police action? And clearly here, it was investigatory in design and purpose. The district court did find that, because it was clearly meant to get information for Mr. Street. So this isn't a safety stop. This isn't a stop based on exigent circumstances. And so I think that prong of flagrancy favors us. The second one, also I think favors us, and this is what the court didn't agree with, is whether the stop was obviously wrong or likely unconstitutional, but done anyway. And I would assert, and I think we make this clear in our briefs, this was wrong. Again, police had information only two black men were involved in the robbery. They had two black men in custody that both fled from the scene by the time they stopped Mr. Street. And the only thing he had in common, again, was his race and sex. He didn't match the clothing description of any of the suspects. And he was not otherwise acting suspiciously. This is contrary to what the government keeps asserting. But the district court was clear that he was not acting suspiciously, walking out of the store, holding a cell phone to his ear, and not making eye contact. He was singled out from a very large crowd in public outside the Walmart, in view of everyone in the crowd. So this is intrusive and humiliating. It lasts for 10 to 15 minutes, so it's not an extremely long time, but it's not de minimis. And again, the only basis they had were these two hunches. One, we think there might be a third actor, but we have no information supporting that. And two, if there was a third actor, he must be the same sex and race as the other two that we already have in custody. And again, Judge Hamilton, to go to your hypothetical, I think that that's a useful thought experiment. If there was 20 black males outside the store, and they started to stop every black male of those 20, I think that illustrates how wrong this stop was and how flagrant. And the fact that it was just one, just Mr. Street, does not reduce that. I'm into my red light. If the court has any other questions, I'm happy to answer. Otherwise, I'll save a little time. Thank you, Mr. Donovan. Thank you. And Mr. Alexander, for the government. May it please the court, my name is Keith Alexander, and I represent the United States. Just to be clear about the record, just so we can answer that inquiry. And what the record shows is that when the two first officers arrive at the scene, and there's video of this on their body camera, they see parked on the side of the Walmart a white SUV. It's not typically where cars are parked, but they see that. They also see only three people between that white SUV and the entrance of the Walmart. And the testimony was that they saw him walking towards that entrance. And those three individuals were African-American men. When the individuals see the police, one of them, Mr. Donovan is correct, takes off running to an adjacent cemetery. And at that point in time, those two officers get out of their car, run after him, apprehend him, and then notify people via dispatch and in person as well that they believe that possibly one black male had entered into the Walmart. Mr. Donovan points out correctly that at the end of the day, one of those three individuals happened to be an employee of the Walmart, but they didn't know that at the time when they were reporting this over the dispatch and when they stopped him. They didn't know that at the time. It was something they found out afterwards. And in fact, one thing they did find out afterwards was that one of those three was Mr. Street. That was, again, though, after the fact. So when they did the controlled exit of the Walmart, that was informed by what those officers had seen. And the only non-employee individual who matched the sex and race of the suspects as described by the victim and as observed by the officers was Mr. Street. And that's what informed their decision. Just to be clear on that part of the record. Also, yes? Did the government purposely abandon the second rationale that the district court used to find the evidence admissible? In other words, does the government believe there's not enough here to support admitting the evidence under the inevitable discovery doctrine? Your Honor, I did not raise that on appeal. It was not really the point of contention primarily below. But you are correct. I just checked it. In the district court's opinion, page seven and eight, the district court relied as an alternative theory of the inevitable discovery doctrine. All right. I think we win. First of all, I think there's reasonable suspicion to support the stop. But also, I think the district court was correct on the attenuation theory. And frankly, I think we're stronger there than on the inevitable discovery. Because with inevitable discovery, we have to show kind of more of a strict but-for causation for the, that but-for causation, that causation chain was broken at some point. Well, we don't have to show that for the attenuation theory. But you are correct. The district court relied on the inevitable discovery. That's not challenged on appeal. So we didn't respond to that portion of it. Thank you. With regard to the basis for reasonable suspicion, as Judge Hamilton pointed out, there are other factors that informed their decision to stop Mr. Street. So how about Mr. Donovan's hypothetical? You've got 20 black males in the Walmart shopping at the time. I think that changes the analysis, frankly. I think if there's nothing that distinguishes those 20 individuals from each other that would give them reason to believe that they were potentially a suspect in the robbery, then I would say reasonable suspicion would be a lot harder for us to meet there. For all 20. For all 20. But here, because he was the only one, and they had reason to believe that at one end of that Walmart, that's what allowed them to distinguish Mr. Street from the others. And as you point out, if the description of the robbers was two white males, if they had observed three white males between the vehicle and the entrance of the Walmart, then everybody else that didn't meet that description would have been removed as a suspect, just as they did here. Does Terry and Terry jurisprudence allow the police to stop witnesses, or potential witnesses? I've never had that come up before. I can't think of a case where they justified a Terry stop based on the witness. Usually they have to reasonably suspect that they were involved in the crime or had just committed a crime. And the reason why they stopped him was because they thought he might have been involved in the crime, for all the reasons that I've gone through here. Did the police stop anybody else at the Walmart? Did they talk to potential witnesses, get names and addresses? Do we know that? I don't believe the records establish that they stopped anybody else during the Walmart. They may have talked to people here and there, but the only evidence of a stop was that of Mr. Streets. And even if there isn't reasonable suspicion to justify the stop, the attenuation exception of the exclusionary rule applies here. And I think that United States versus Carter is right on point. And as I've tried to point out in the briefs, I think that the fundamental error in the appellant's argument on this point is that he's demanding this sort of strict but for logical causation, that that chain of causation never was logically broken. But that's not the question in the attenuation exception to the exclusionary rule. It's more like proximate cause. As the Supreme Court said in Hudson versus Michigan, the question is whether the evidence was attained by exploitation of the illegal stop or by means sufficiently distinguishable to purge the primary taint of that stop. And every case has held that address the issue that it's not sufficient to demonstrate that taint when an unlawful stop or search merely gives the police the identity of the potential perpetrator. This court said that in Carter. The Ninth Circuit said it in United States versus Smith. The Second Circuit said the same in United States versus Freedland. And the appellant points to no case to the contrary. So if this court were to hold, as the appellant suggests it should on the attenuation theory, I think it would create potential real tension between this decision and United States versus Carter. With regard to the flagrancy of the violation that Mr. Donovan emphasizes in his argument, I don't think that it was an obvious violation. This is not an instance where they enter a residence without a warrant or they talk to somebody when they're in custody without giving them Miranda warnings. Where it's very clear that there's a violation. This is a reasonable suspicion question. And whether they reach the level of reasonable suspicion or not is not going to be maybe as obvious to the officer who's facing a difficult situation with a potential armed robber right there. And for all the reasons I stated before, I think he actually did meet that burden here. So I don't think by any means that this was an obvious violation. In fact, I don't think it was a violation at all. And so that's why I don't think it was a flagrant violation and he can't show that it was. Unless the court has any other questions of me, I will rest on the briefs and ask the court to affirm the district court's denial of the motion to suppress. Thank you. Thank you, Mr. Alexander. Rebuttal, Mr. Donovan? How much time? Take a minute. OK, thank you. Just a few quick points. I want to be really clear here. So Officer Nifer is who stops Mr. Street. He's told to do so by Casta. And Casta is told to do so by Niles. So it's a confusing fact-intensive chain here. But Nifer, the one who actually stops him, when asked whether he had individual knowledge of a third suspect, he said no. He said there was no verification that there was a third suspect and confirmed the only information he had was related to two suspects. Same with Niles. So Niles, again, the one who told Casta, who told Nifer to do the stop. Was there any communication about the possibility of a third suspect? Any kind of chatter on the dispatch to indicate that there might be a third suspect? And he said no, not provided to us. Part of the collective knowledge doctrine has to be that they have to be in communication with each other. And the government has not shown that here. So again, we're left with, when Mr. Street is stopped, he's stopped only because he's black and only because he's male. Judge Rovner, to answer your question about inevitable discovery, Judge Pepper lays out the chain on pages 7 to 8. And the chain is broken where they would have learned Mr. Street's identity. Because again, his co-defendants could not identify him, could not name him, could do nothing other than respond to the picture, which was obtained only based on the information taken from Mr. Street during his stop. And so I think an inevitable discovery would not save the day here. Plus, it was not really the focus of the party's argument at the hearing in May of 2017. And my last point, I think I'm down to just a few seconds. The government, I think, is who gets Carter wrong. Because in Carter, the key difference is there is an independent source for the identity of the defendant, which was the landlord. Here there's not. And that's significant. Here, again, the only way they identified Mr. Street was from Mr. Street during the stop. There's no lag in between the illegal police action and the evidence that they obtained, which is another one of the attenuation factors. And so I think that the government keeps confusing that. I think the district court confused that. So if nothing else, I'll rest. Thank you very much. Mr. Donovan, did you serve by court, court recruitment or appointment? I did. Thank you very much for the services you provided to you and your client. Thank you. To us and your client, rather. And thanks to the government as well. Case is taken under advisement.